IN THE U.S. DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| YANPING CHEN,                                  )<br>                                                             )<br>         Plaintiff,                              )<br>                                                             )<br>vs.                                                       )<br>                                                             )<br>                                                             )<br>FEDERAL BUREAU OF INVESTIGATION, )<br>*et al.*,                                               )<br>         Defendants.                       )<br>_____) | Misc. No:<br><br>(Underlying Case No. 18-cv-3074 (CRC) (D. District of Columbia)) |

**NON-PARTY STEPHEN J. RHOADS' MOTION TO QUASH**
**SECOND DEPOSITION SUBPOENA**

Chief Warrant Officer Stephen J. Rhoads, by counsel and pursuant to Rule 45 of the Federal Rules of Civil Procedure, respectfully requests an order be entered quashing a second deposition subpoena served on him by Yanping Chen, the plaintiff in *Chen v. Federal Bureau of Investigation, et al.*, Case No. 18-cv-3074 (CRC) (D. District of Columbia). Chief Rhoads also requests that he be awarded attorney's fees and costs and any and all other relief the Court deems just and equitable. As grounds therefor, Chief Rhoads states as follows:

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      Introduction.**

The subpoena at issue is the fourth and latest subpoena served by Yanping Chen concerning Chief Rhoads. To date, non-party Chief Rhoads, a soon-to-be former U.S. Department of Defense ("DOD") employee and U.S. Army servicemember, has: (1) produced hundreds of pages of records in response to an April 2020 subpoena *duces tecum* served by Chen, including text messages stored on a cell phone Chief Rhoads can no longer locate; (2) spent hundreds of hours reviewing and redacting thousands of pages of cell phone records Chen

subpoenaed from Chief Rhoads' cell phone carrier in September 2020; and (3) sat for a day-long deposition on March 24, 2022 pursuant to a February 15, 2022 deposition subpoena.

Chen is the plaintiff in a Privacy Act lawsuit against the Federal Bureau of Investigation ("FBI"), DOD, the U.S. Department of Justice, and the U.S. Department of Homeland Security ("DHS"). Chief Rhoads once worked as a recruiter for Chen's private, for-profit university, which offers undergraduate and graduate degrees to U.S. military service members. After Fox News aired three news segments in 2017 about Chen being the subject of an FBI counterintelligence investigation, Chen filed suit, contending that Chief Rhoads likely leaked Privacy Act-protected records from the investigation to Fox News. Fox News had interviewed Chief Rhoads sometime before 2015 for the segments, which identified Chief Rhoads as having been a confidential informant during the FBI investigation of Chen.

None of the information that -Chief Rhoads has produced to Chen in discovery or, to Chief Rhoads' knowledge, that Chen has obtained from other sources in discovery to date implicate Chief Rhoads as the "likely leaker." In fact, the opposite is the case. Chief Rhoads testified during a nearly 7-hour deposition on March 24, 2022 that Fox News reporter Catherine Herridge showed him the allegedly leaked records when he was interviewed by her at Fox News sometime before 2015. He also testified that this was the first time he learned that Fox News had the records. Fox News obviously had obtained the records sometime before Chief Rhoads's "pre-2015" interview. Chen nonetheless seeks to depose Chief Rhoads for a second time, purportedly to question him about a phone he did not begin using until approximately February 2018, more than three years after the interview. Three weeks before Chief Rhoads' March 24, 2022 deposition, Chen demanded that Chief Rhoads either produce allegedly missing text messages from between 2014 and 2017 or turn over his phone to have it forensically searched.

When Chief Rhoads later advised Chen that he could no longer locate the phone and believed it was lost, Chen issued the subpoena at issue, which seeks to depose Chief Rhoads for a second time. Chen purportedly seeks to interrogate Chief Rhoads about two subjects: (1) the whereabouts of the lost phone; and (2) his May 2020 effort to search text messages on the now-lost phone.

Chief Rhoads complied fully with Chen's April 2020, September 2020, and February 2022 subpoenas despite the tremendous burden they imposed on him at a particularly difficult time for Chief Rhoads and his family. Chen's latest subpoena should be quashed because: (1) the subpoena does not specify a physical location for the deposition; (2) Chief Rhoads objected to producing his phone when he responded to Chen's records subpoena in May 2020, and Chen never challenged that objection; (3) Chen's request is untimely; (4) Chen had ample opportunity to question Chief Rhoads about the phone and his May 2020 search of the phone at the March 24, 2022 deposition but clearly chose not to do so; and (5) the subpoena is neither relevant nor proportional to the needs of Chen's case. Chen also should be required to satisfy Chief Rhoads' attorney's fees and costs for this motion because the subpoena is baseless and harassing.

**II.     Factual Background.**

At all relevant times, Chief Rhoads was a DOD employee and on active duty in the U.S. Army. Declaration of Stephen J. Rhoads ("Rhoads Decl."), para. 4. He was a technical expert in aviation maintenance and project management and was stationed in Richmond, Virginia. *Id.* Chief Rhoads currently is on leave from his employment and military service and plans to retire on July 15, 2022. *Id.* He will continue to serve in the U.S. Army Reserve. *Id.*

Chief Rhoads returned to his native Illinois in the Spring of 2022, in anticipation of his retirement, following the August 2021 death of his wife, U.S. Army Staff Sargent Marion

Rhoads, after a protracted illness. Rhoads Decl., para. 5. He currently resides in Marshall, Illinois with his severely autistic step-son, for whom he is the primary caregiver.[1] *Id.*

Chief Rhoads is not a party to Chen's lawsuit, which she filed in December 2018. Declaration of Paul J. Orfanedes ("PJO Decl."), para. 16 & Ex. 1 thereto ("Compl."). According to Chen's Complaint, Chen was the subject of a six-year FBI counterintelligence investigation. Compl., paras. 15-16 & Ex. B thereto. Chen alleges that a person or persons at one of the federal agencies named as defendants in her lawsuit disclosed photographs and other records from the investigation to Fox News, which published them in reports aired on February 24, 2017, April 28, 2017, and June 28, 2017. *Id.*, paras. 24-32 & Exs. B, D, and E thereto. Also according to the Complaint, the photographs and at least some of the other records at issue were seized by the FBI when FBI agents executed search warrants at Chen's home and office in December 2012. *Id.*, paras. 17-21 and 23. Chen, who was born in China, also alleges that her immigration records were disclosed to Fox News. *Id.* at paras. 11 and 27.

Among the elements Chen must prove to prevail on her Privacy Act claim is that records pertaining to Chen were (1) kept in a "system of records" maintained by one of the defendant agencies; (2) retrievable by and retrieved using a personal identifier for Chen; (3) willfully or intentionally disclosed to Fox News by an official or employee of the agency without Chen's prior written consent; and (4) causing her to suffer "actual damages."[2] *Paige v. Drug*

---

[1] Chief Rhoads advised Chen before she served her July 5, 2022 subpoena (Chief Rhoads agreed to accept service) that he had moved to Marshall, Illinois. PJO Decl., para. 15.

[2] Chief Rhoads has learned that much of the information in these records was contained in a December 3, 2012 FBI search warrant affidavit, the seal on which expired on March 4, 2013. PJO Decl., para. 17 & Ex. 2 thereto. Accordingly, Chief Rhoads questions whether Chen can even viably assert that the information was "leaked."

*Enforcement Admin.*, 665 F.3d 1355, 1358-59 (D.C. Cir. 2012); *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000).

Chen's Complaint does not identify who allegedly disclosed the records to Fox News. She alleges "on information and belief" that "one or more agents of the FBI (or, possibly, other Defendants)" disclosed the records to "one or more persons associated with Fox News." Compl., para. 23. She further alleges that "at least some and likely all" the disclosed records were maintained by "the FBI, DHS, and/or other Defendants," but identifies only "systems of records" maintained by the FBI and DHS. *Id.*, para. 51-53. In various filings (other than the Complaint), Chen baldly asserts that Chief Rhoads "willfully leaked" records to Fox News' Catherine Herridge and "is a likely source of the leaks," although she does not identify any evidence to support this claim. She also does not identify any alleged "systems of records" pertaining to her to which Chief Rhoads had access or any such systems maintained by DOD or the U.S. Army, among other shortcomings.

Unable to plead these most basic facts, Chen embarked on a fishing expedition to try to identify the source of the disclosure to Fox News. That effort has included a relentless pursuit of Chief Rhoads.

From approximately 2009 to 2014, Chief Rhoads worked part-time at the University of Management and Technology ("UMT"), an entity founded and owned by Chen. Rhoads Decl., para. 6; Compl., paras. 13 and 14. The Complaint alleges that UMT is an "educational institution that provides post-secondary and graduate education to working adults." Compl., para. 13. According to the Complaint, a significant portion of UMT's students is comprised of U.S. military servicemembers, and UMT has collected more than $6 million from the federal government by participating in DOD's and the U.S. Department of Veterans Affairs' tuition

assistance programs. *Id.*, para. 42 & Ex. B thereto. Chief Rhoads' work at UMT consisted of recruiting servicemembers and veterans for the school. Rhoads Decl., para. 6.

According to the Fox News reports, which are included in Chen's Complaint, the FBI approached Chief Rhoads in 2012 and asked him to assist in its investigation of Chen. Compl., Ex. B thereto. Also according to the reports, Chief Rhoads told Fox News that Chen told him she had been a colonel in the Chinese army before immigrating to the United States. *Id.*

At no time relevant to Chen's lawsuit did Chief Rhoads' official duties and responsibilities include conducting criminal or counter-intelligence investigations, assisting law enforcement, or maintaining records of criminal, counterintelligence, or law enforcement investigations. Rhoads Decl., para. 7. He did not participate in the searches of Chen's home and office in December 2012. *Id.* Chief Rhoads' official duties and responsibilities also did not include immigration issues or maintaining immigration or citizenship records. *Id.* Chen appears to have targeted Chief Rhoads because he cooperated with the FBI's investigation and was interviewed by Fox News.

### III. **Procedural Background.**

On April 7, 2020, Chen served a 14-part document subpoena on Chief Rhoads seeking communications with Fox News and communications referencing Chen, among other items. Rhoads Decl., para. 8; PJO Decl., paras. 3 and 18 & Ex. 2 thereto. The subpoena did not specify a format for producing electronically stored communications such as text messages. *Id.*

Even before Chief Rhoads formally responded to the subpoena, he advised Chen on May 6, 2020 that the operating system on his cell phone was not functioning properly and that the phone did not hold a charge for any length of time. Rhoads Decl., paras. 11 and 16; PJO Decl., para. 4. He also advised Chen that he had been able to take screen shots of potentially

responsive text messages stored on the malfunctioning phone in order to preserve them. *Id.* He further advised Chen that, because the subpoena did not specify a format for producing electronically stored information, he intended to produce the screen shots of any responsive, non-privileged texts in pdf format only and objected to producing them in any other format. *Id.* Chief Rhoads nonetheless agreed to retain the malfunctioning phone instead of returning it to the carrier, which had sent him a replacement. *Id.*

Chief Rhoads responded to Chen's subpoena on May 21, 2020. PJO Decl., para. 5. He produced over one hundred pages of records that included text messages he exchanged with Fox News' reporter Catherine Herridge. *Id.* He also produced texts messages exchanged with Fox News producer Pamela Browne. *Id.* He made a small, additional production on June 18, 2020. *Id.*, para. 6.

Most relevant to the present dispute, Chief Rhoads' May 21, 2020 response expressly objected to any claim that the subpoena required him to produce the phone itself:

> Mr. Rhoads objects to any assertion that the subpoena or Rule 45 of the Federal Rules of Civil Procedure requires him to make available for imaging or mirroring any device he may have used or is using to communicate or store electronically stored information.

PJO Decl., para. 5. Chen never challenged this objection or moved to compel Chief Rhoads to produce the phone for imaging. *Id.*

In June 2020, a dispute arose between Chen and Chief Rhoads about whether Chen's April 7, 2020 subpoena required Chief Rhoads to obtain call and text logs from his cell phone carrier, T-Mobile. PJO Decl., para. 7. Chen asserted that the subpoena demanded the production of logs of calls and texts concerning particular subjects, including Chen, UMT, and the FBI investigation, and with particular individuals, including Fox News' Herridge. *Id.* Chief Rhoads disputed that the subpoena required him to produce logs of any sort. *Id.* On September 28,

2020, Chen subpoenaed T-Mobile for records of every call and text Chief Rhoads sent or received from December 1, 2012 to "the present," nearly an eight-year time period. *Id.*, paras. 8 and 19 & Ex.4 thereto.  In response to a motion to quash, the Court cut back the subpoena's time period substantially and granted Chief Rhoads the opportunity to review and redact the logs to protect his privacy before producing them to Chen.[3]  PJO Decl., para. 8.

On June 2, 2021, Chief Rhoads produced redacted logs for the period from August 1, 2014 to June 28, 2017, pursuant to the Court's order.  PJO Decl., para. 9.  The production required Chief Rhoads and his counsel to spend hundreds of hours reviewing and redacting thousands of pages of logs for literally tens of thousands of individual calls and texts.  Rhoads Decl., para. 9; PJO Decl., para. 9.  Chen did not challenge a single redaction, but instead filed a motion seeking to restore the subpoena to its original, 8-year scope.  PJO Decl., para. 9.  The Court refused Chen's blanket request but authorized a far narrower production of logs to or from a discrete set of phone numbers for the expanded time period.  *Id.*  Chief Rhoads and his counsel again spent a tremendous amount of time reviewing and redacting logs containing records of literally tens of thousands of calls and texts from December 1, 2012 to July 13, 2014 and June 29, 2017 to December 31, 2018.  Rhoads Decl., para. 9; PJO Decl., para. 9.  On March 17, 2022, Chief Rhoads produced the additional logs to Chen.  PJO Decl., para. 9.

In the interim, Chen identified on March 2, 2022 what she claimed were discrepancies between the text messages Chief Rhoads produced in May and June 2020 and the logs he produced on June 2, 2021.  PJO Decl., para. 10.  Chen claimed the logs showed that Chief Rhoads had not produced some 186 texts he exchanged with Fox News' Catherine Herridge

---

[3]  Because T-Mobile is located in New York, the subpoena required compliance in New York and Chief Rhoads was required to retain New York counsel and file his motion to quash in New York.  The motion was later transferred to the District of Columbia.  PJO Decl., para. 8.

between November 12, 2014 and November 16, 2016 and a far smaller number from 2017. *Id.* Chen demanded that Chief Rhoads either produce the texts identified in the logs or turn over his phone so that it could be searched forensically. *Id.* In response, Chief Rhoads noted that he had complied fully with Chen's subpoena in May 2020, had objected to producing his phone or having it imaged at that time, and that Chen's March 2, 2022 demand was untimely. *Id.* When Chen pressed the issue, Chief Rhoads attempted to locate the malfunctioning phone he had used between February 2018 and early May 2020 and had searched in response to the April 7, 2020 subpoena. Rhoads Decl., paras. 10-11. Rhoads had stored the phone in a Crown Royal bag inside a box in the basement of his Virginia home. *Id.*, para. 11. When he went to the basement to retrieve the phone, the box was no longer there. *Id.*

On March 24, 2022, Chen deposed Chief Rhoads for nearly seven hours pursuant to a deposition subpoena served on February 15, 2022. PJO Decl., paras. 11 and 20 & Ex. 5 thereto. Chen had every opportunity to ask Chief Rhoads about his phones, his search of the malfunctioning phone in May 2020 to respond to the April 7, 2020 records subpoena, and his texts and communications with Herridge, Browne, and Fox News generally. Chief Rhoads testified at length about his communications with Herridge and specifically testified with respect to text messages, "We gave you all the messages that we have available." *Id.* When Chen's counsel asked Chief Rhoads whether he was aware of any text messages with Herridge that he had not produced, Chief Rhoads testified, "No, sir." *Id.* Chen did not ask Chief Rhoads about his phone's whereabouts or his search of the phone for text messages, plainly waiving the opportunity to do so. *Id.*

Despite not asking Chief Rhoads about the phone or his search of the phone when she had ample opportunity to do so, Chen continued to press. PJO Decl., para. 12. Chief Rhoads

continued to assert in response that he had satisfied his obligations under the April 7, 2020 records subpoena. *Id.* He also reminded Chen that she never challenged his May 2020 objection to producing the phone, and he continued to assert that Chen's latest demand was untimely because she had received the phone logs from T-Mobile nearly a year before. *Id.* At the same time, Chief Rhoads also continued to try to locate the malfunctioning phone he searched in response to the records subpoena. Rhoads Decl., paras. 112-13. Within two hours of Chen advising Chief Rhoads on May 19, 2022 that she intended to call the Court about ordering the production of the phone Chief Rhoads informed Chen that, despite his best efforts, he could no longer locate the malfunctioning phone from the May 2020 search and believed it to be lost:

> You should know that Chief Rhoads' wife's illness obviously caused substantial disruption to their household, and, in the aftermath of Sgt. Maj. Rhoads' death, family members cleaned out the Rhoads' home. It is believed that a family member may have disposed of the malfunctioning phone Chief Rhoads used at the time he was subpoenaed. Chief Rhoads has been unable to locate the phone despite his best efforts, and it is believed that the phone is now lost.

PJO Decl., para. 13. Chen then demanded that, instead of producing the phone to have it forensically searched, Chief Rhoads should sit for a second deposition to be interrogated about his efforts to search for the phone. *Id.*, para. 14. Chief Rhoads agreed to accept service of Chen's fourth subpoena on July 1, 2022. *Id.*, para. 15. Chen served the subpoena on July 5, 2022, for a deposition to take place on July 20, 2022. *Id.*, paras 15 and 21 & Ex. 6 thereto.

**IV.   Argument.**

    **A.   The Subpoena Is Defective on Its Face.**

Rule 45 of the Federal Rules of Civil Procedure requires that a subpoena "command each person to whom it is directed to do the following at a *specified* time and *place*: attend and testify." Fed. R. Civ. P. 45(a)(1)(A)(iii). The rule also requires motions to quash or modify a

subpoena be filed in "the court for the district where compliance is required."  Fed. R. Civ. P. 45(d)(3)(A) & (B).

Chen's subpoena specifies no physical place for the deposition.  PJO Decl., para. 21 & Ex. 6 thereto.  It only says that the deposition is "[t]o be conducted remotely via zoom."  *Id.*  Zoom is a method of taking a deposition, not a physical location.  This omission bears on both the subpoena's sufficiency and where a motion to quash (or enforce) can be brought.  There is no "U.S. District Court for the District of Zoom."  Rule 30 of the Federal Rules of Civil Procedure states, "For purposes of this rule and Rules 28(a), 37(a)(2), and 37(b)(1), the deposition takes place where the deponent answers the questions."  Fed. R. Civ. P. 30(b)(4).  Rule 30 does not reference Rule 45, however, and Rule 45 is silent on the issue.  Either the subpoena is defective on its face because it fails to identity the location of the deposition, in which case no court has jurisdiction to quash or enforce the defective subpoena, or, because Chief Rhoads now resides in Marshall, Illinois, the place where Chief Rhoads would answer the questions is the Southern District of Illinois.  If jurisdiction exists at all, the place of compliance is in the Southern District.

   **B.**  **The Subpoena Must Be Quashed.**

Rule 45 requires a subpoena be quashed or modified if it requires disclosure of privileged or other protected matter, if there is no exception or waiver applicable, or if the subpoena subjects a person to undue burden.  Fed. R. Civ. P. 45(d)(3)(A).  A subpoena issued under Rule 45 also is subject to Rule 26's relevance and proportionality standards.  *See*, *e.g.*, *Northwestern Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 930 (7th Cir. 2004) (applying Rule 26(b)(1) to a subpoena for hospital records).  Accordingly, Chen has the burden of demonstrating that the information sought is relevant and proportional to the needs of her case.

Chen's subpoena plainly subjects Chief Rhoads to undue burden. The purported reason behind Chen's latest subpoena is to question Chief Rhoads about the whereabouts of the phone he used from February 2018 to early May 2020, when he responded to Chen's first subpoena, so that the phone could be forensically searched for text messages dating from November 2014. Chen's rationale for a second deposition is faulty. Chief Rhoads objected to producing or imaging the phone in his May 2020 response to Chen's subpoena. Chen never challenged that objection and therefore waived the right to do so long ago. It would be incongruous to have Chief Rhoads sit for a deposition and be interrogated about the phone so that the phone could be relocated, produced, and forensically searched when Chen never challenged Chief Rhoads' objection to producing the phone in a timely manner two years ago.

If Chen had bothered to ask Chief Rhoads about the phone at his deposition, she would have learned that Chief Rhoads had used at least four phones over the years and did not even have the phone until February 2018. Rhoads Decl., para. 14. At that time -- Chief Rhoads remembers it because it is when his wife first became ill and was hospitalized -- he obtained the phone to replace an earlier one that, to the best of his recollection, he began using sometime in 2016. *Id.* Chen also would have learned that Chief Rhoads cannot say whether, when he started using a new phone, he transferred text messages from the old phone to the new one. He recalls one time when he tried to transfer texts from an old phone to a new one but was not able to do so. *Id.* Chen also would have learned that, before Chief Rhoads was under subpoena, it was not uncommon for him to delete text messages. *Id.*, para. 15.

Moreover, the phone is not the trove of evidence Chen claims. All of the purported 186 "missing" texts from November 12, 2014 to November 16, 2016 predate the time when Chief Rhoads even had the February 2018 phone, and some likely predate the phone Chief Rhoads

used from 2016 to February 2018.  In this regard, Chief Rhoads testified at his deposition that, when he was interviewed by Fox News' Catherine Herridge sometime "pre-2015," she already had the records that would later appear in the 2017 news segments.  Because Fox News had the records before 2015, a phone that Chief Rhoads did not begin using until February 2018 is unlikely to shed light on how or when Fox News obtained the records, especially when Chief Rhoads used a different phone from 2016 to February 2018.  Chen's handful of purportedly missing texts from 2017 also pre-date Chief Rhoads' use of the February 2018 phone.  And while Chief Rhoads' search of the February 2018 phone yielded a single text from December 2016 and other texts from 2017, Chief Rhoads lacks the expertise to know why these earlier texts would appear on a phone he did not have or begin using until February 2018 phone.  Rhoads Decl., para. 14.  It also is unreasonable to expect that, in May 2020, March 2022, or even July 2022, a private individual would be able to locate and produce from a cell phone every text message that appeared on his or her phone records from as many as six or even eight years earlier.  Under the circumstances, questioning Chief Rhoads now about the whereabouts of the February 2018 phone so that the phone could be located and forensically searched for messages from as early as 2014 is unduly burdensome, if not a waste of time and simple harassment.

Chen also had ample time in which to raise the issue of the purportedly lost messages but failed to do so.  Chief Rhoads produced the phone logs to Chen on June 2, 2021.  Chen waited nine months -- until March 2, 2022 -- to raise the issue of purported discrepancies between the texts Chief Rhoads produced in May and June 2020 and the logs he produced on June 2, 2021.  If Chen had acted in a timely manner, the phone may not have become lost.  The delay -- Chief Rhoads' wife passed away and Chief Rhoads relocated to Illinois in the intervening period -- is Chen's fault, not Chief Rhoads'.

Chen's counsel also had ample opportunity to question Chief Rhoads about the phone at Chief Rhoads' March 24, 2022 deposition. Chen's counsel used approximately 6½ of the 7 hours allotted for the deposition but questioned Chief Rhoads about the phone only briefly. Chief Rhoads testified that he produced all responsive messages that were available and that he was not aware of any text messages with Herridge that he did not produce. Chen's counsel plainly could have asked Chief Rhoads about the location of the phone at that time, in which case Chen would have learned that Chief Rhoads could no longer find the phone. Chen's counsel could have pursued whatever follow-up he wanted and asked Chief Rhoads about his search of the phone in response to the April 7, 2020 subpoena. He chose not to do so. To allow Chen a second bite at the apple would reward her improper tactics and impose a substantial, further burden Chief Rhoads without any meaningful likelihood of uncovering new, relevant evidence.

Finally, requiring Chief Rhoads to sit for a second deposition to ask him about his search for responsive text messages on the February 2018 phone and the whereabouts of that phone is neither relevant nor proportional to the needs of the case. Chief Rhoads understands that discovery commenced more than two years ago and, but for discovery of Fox News, Herridge, and other current or former Fox News employees, closed in December 2021. Neither of Chen's purported lines of questioning is substantive. Regarding the phone's whereabouts, Chief Rhoads will testify that he searched for the phone after Chen began inquiring about it on March 2, 2022. Rhoads Decl., paras. 10-13. He also will testify that he asked the family members who helped him clean out his home after his wife's passing if they had the phone or knew where it was. *Id.*, para. 12. None of the family members was able to provide any information about the phone's location. *Id.* Chief Rhoads' testimony will not advance Chen's case. No interrogation of him or second guessing of his efforts to locate the phone is going to yield evidence that would tend to

prove or disprove any fact material to Chen's Privacy Act claim. The same is true for requiring Chief Rhoads to testify about his search for responsive text messages on the February 2018 phone in 2020. Chief Rhoads will testify to the same thing that he told Chen on May 6, 2020 – that he used the phone's search function to search for messages, took screen shots of what he determined were responsive, then printed out the screenshots for production to Chen. *Id.* at para. 16. None of this testimony is relevant or proportional to the needs of Chen's claim or otherwise justifies deposing Chief Rhoads a second time.[4]

**IV.     Conclusion.**

Chief Rhoads respectfully requests that his motion to quash Chen's latest subpoena be granted and that he be awarded his attorney's fees and costs and any and all other relief the Court deems just and proper.

Date:  July 15, 2022                                        Respectfully submitted,

*/s/ Christine Svenson*
Christine Svenson (Lead Counsel)
Ill. Bar No. 6230370
SVENSON LAW OFFICES
345 N. Eric Drive
Palatine, IL 60067
Tel: (312) 467-2900

Paul J. Orfanedes
Ill. Bar No. 6205255
JUDICIAL WATCH, INC.
425 Third Street SW, Suite 800
Washington, DC  20024
Tel:  (202) 646-5172

*Counsel for Non-Party Stephen J. Rhoads*

---

[4] Under Rule 45(d)(3), the Court may or even must modify the subpoena to the extent Plaintiff can demonstrate that the deposition is relevant and proportional to the needs of the case, although Chief Rhoads disputes that Plaintiff has or will be able to make such a showing.

**CERTIFICATE OF SERVICE**

      I certify that that on this 15th day of July, 2022, the foregoing NON-PARTY STEPHEN J. RHOADS' MOTION TO QUASH SECOND DEPOSITION SUBPOENA was served, via email, on the following:

> Matt Jones
> Patrick Carome
> Jessica Lutkenshaus
> WILMER CUTLER, PICKERING,
>  HALE AND DORR, LLP
> 1875 Pennsylvania Avenue NW
> Washington, DC 20006
> Matt.jones@wilmerhale.com
> Patrick.carome@wilmerhale.com
> Jessica.lutkenhaus@wilmerhale.com
>
> Carol Federighi
> Garrett Coyle
> Laurel H. Lum
> Trial Attorneys
> U.S. Department of Justice
> Civil Division, Federal Programs Branch
> 1100 L Street NW
> Washingon, DC 20005
> Carol.Federighi@usdoj.gov
> Garrett.coyle@usdoj.gov
> Laurel.H.Lum@usdoj.gov

                                        */s/ Paul J. Orfanedes*
                                        Paul J. Orfanedes