IN THE U.S. DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| YANPING CHEN, ) | | |
| ) | | |
| Plaintiff, ) | | Misc. No: |
| ) | | |
| vs. ) | | (Underlying Case No. 18-cv- |
| ) | | 3074 (CRC) (D. District of |
| ) | | Columbia)) |
| FEDERAL BUREAU OF INVESTIGATION, ) | | |
| *et al.*, ) | | |
| Defendants. ) | | |
| _____) | | |

## DECLARATION OF STEPHEN J. RHOADS

I, Stephen J. Rhoads, pursuant to 28 U.S.C. § 1746, declare and state as follows:

1. I am an adult and resident of Marshall, Illinois.

2. I have personal knowledge of the matters related below.

3. I submit this declaration in support of my motion to quash the deposition subpoena served on me by Plaintiff Yanping Chen in *Chen v. Federal Bureau of Investigation, et al.*, Case No. 18-cv-3074 (CRC) (D. District of Columbia), on or about July 5, 2022.

4. I am an employee of the U.S. Department of Defense and am on active duty in the U.S. Army. I am a technical expert in aviation maintenance and project management and am stationed in Richmond, Virginia, although I am currently on leave and am retiring on July 15, 2022. I plan to continue to serve in the U.S. Army Reserve after I retire.

5. Pending my retirement, I returned to my native Illinois in the Spring of 2022, following the August 2021 death of my wife, U.S. Army Staff Sargent Marion Rhoads, after a lengthy illness. I sold my home outside Richmond and currently reside in Marshall, Illinois with my severely autistic step-son, for whom I am the primary caregiver.

6. From approximately 2009 to 2014, I worked part-time at the University of Management and Technology ("UMT"), an entity that I believe was founded and owned by Ms. Chen. My work at UMT consisted of recruiting servicemembers and veterans for the school.

7. At no time relevant to Ms. Chen's lawsuit did my official duties and responsibilities include conducting criminal or counter-intelligence investigations, assisting law enforcement, or maintaining records of criminal, counterintelligence, or law enforcement investigations. I did not participate in the FBI's searches of Ms. Chen's home and office in December 2012. My official duties and responsibilities have never included immigration issues or maintaining immigration or citizenship records.

8. On or about April 7, 2020, Ms. Chen served me with a 14-part document subpoena seeking communications with Fox News, communications referencing Ms. Chen, and among other items. The subpoena was directed to me in my personal capacity, not my official capacity, and I was directed by my employer, the U.S. Department of Defense ("DOD"), to produce only personal capacity records in response. It was and is my understanding that DOD e responded to Ms. Chen for any requests for my official capacity records.

9. On or about September 28, 2020, Ms. Chen subpoenaed my cell phone carrier, T-Mobile, for records of every cell phone call and text I sent or received over an eight-year time period, from December 1, 2012 to "the present." I moved to quash the subpoena and succeeded in having its scope narrowed. Even responding to the narrowed version of the T-Mobile subpoena required my counsel and I to spend hundreds of hours reviewing and redacting thousands of pages of records of literally tens of thousands of individual calls and texts. When the scope of the subpoenas was expanded later at Ms. Chen's request, my counsel and I again spent a tremendous amount of time reviewing and reacting logs containing records of literally

tens of thousands of calls and texts I sent or received from December 1, 2012 to July 13, 2014 and June 29, 2017 to December 31, 2018.

10.     On March 2, 2022, Ms. Chen's counsel wrote to my counsel complaining about alleged discrepancies between text messages I produced in May 2020 and cell phone logs she subpoenaed from T-Mobile for the period of time from August 1, 2014 to June 28, 2017. Although I responded, through my counsel, that I fully complied with Ms. Chen's April 2020 subpoena in May 2020, I began searching for the phone, which I no longer used because it had malfunctioned.

11.     The operating system on the phone had not functioned properly, and the phone did not hold a charge for any length of time. Because the phone was under warranty, I contacted my carrier in approximately late April 2020, and the carrier sent me a new phone to replace the malfunctioning phone. I kept the malfunctioning phone in a Crown Royal bag inside a box in a storage room in the basement of my Virginia home. When Ms. Chen's counsel inquired about the phone, I went to the storage room to retrieve the phone, but the box was no longer there.

12.     In the aftermath of my wife's August 2021 death and before I relocated to Illinois, family members had helped clean out our home in Virginia. I believe that a family member may have disposed of the malfunctioning phone. I asked my family members if they had the phone or knew where it was. None was able to provide information about the phone or its whereabouts.

13.     When Ms. Chen continued to press the issue over the next several weeks, I kept searching for the phone before concluding on or about May 19, 2022 that the phone was lost.

14.     I have replaced my cell phone several times over the years. I have used at least 4 phones between 2014 and 2020. I did not begin using the phone I searched in response to Ms. Chen's April 7, 2020 subpoena until February 2018. I specifically remember when I obtained

- 4 -

that particular phone because it was when my wife first became ill and was hospitalized. The February 2018 phone replaced an earlier one that, to the best of my recollection, I began using sometime in 2016. I cannot say with confidence that, when I started using a new phone, I transferred text messages from the old phone to the new one. I recall one time when I tried to transfer texts from an old phone to a new one but was not able to do so. I do not recall which phone it was. I do not know why the February 2018 phone I searched in response to Ms. Chen's subpoena had some messages on it from before I began using the phone.

15. It was not uncommon for me to delete text messages before I was subpoenaed by Ms. Chen.

16. When responding to Ms. Chen's April 2020 subpoena, I used the phone's search function to search for messages, took screen shots of what I determined were responsive, then printed out the screenshots and produced them to Ms. Chen through my counsel, after redacting non-responsive and/or personal information.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed on July 12, 2022 in Marshall, Illinois.

By: */s/ Stephen J. Rhoads*
     Stephen J. Rhoads