**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

YANPING CHEN,

          Plaintiff,

    v.

FEDERAL BUREAU OF
INVESTIGATION, UNITED STATES
DEPARTMENT OF JUSTICE, UNITED
STATES DEPARTMENT OF DEFENSE,
and UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,

          Defendants.

Civil Action No. 3:22-mc-0050-SPM

(Underlying Case No. 18-cv-003074-
CRC (D.D.C.))

**YANPING CHEN'S OPPOSITION TO
NON-PARTY STEPHEN J. RHOADS' MOTION TO QUASH**

**TABLE OF CONTENTS**

**INTRODUCTION**........................................................................................................1

**BACKGROUND** ........................................................................................................2

**ARGUMENT** .............................................................................................................6

I.      Designating a Remote Deposition Does Not Render the Subpoena Defective .................6

II.     There Is Good Cause For A Second Deposition of Mr. Rhoads..........................................7

        A.     Dr. Chen Diligently Sought Discovery into the Unforeseeable Loss of the Phone....8

        B.     Mr. Rhoads' Additional Testimony Is Highly Relevant............................................10

        C.     Re-Deposing Mr. Rhoads Will Not Disrupt the Underlying Litigation...................13

        D.     The Deposition Will Not Prejudice Defendants or Mr. Rhoads .............................14

**CONCLUSION** .........................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

## CASES

*2910 Georgia Ave. LLC v. D.C.*, 312 F.R.D. 205 (D.D.C. 2015)...........................................8, 9, 13

*Childers v. Slater*, 197 F.R.D. 185 (D.D.C. 2000).........................................................................14

*In re Rail Freight Fuel Surcharge Antitrust Litig.*, 281 F.R.D. 12 (D.D.C. 2011).....................8, 9

*Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 34 F. Supp. 2d 47 (D.D.C. 1998)......................8

*Matter of May*, No. 13-32459, 2014 WL 12923988
   (Bankr. N.D. Ind. July 9, 2014) ................................................................................................7

*Nicholas J. Murlas Living Tr. v. Mobil Oil Corp.*, No. 93 C 6956,
   1995 WL 124186 (N.D. Ill. Mar. 20, 1995)..............................................................................7

*Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247 (10th Cir. 2011) .........................................................14

*Trask v. Olin Corp.*, 298 F.R.D. 244 (W.D. Pa. 2014) .................................................................10

*Watt v. All Clear Bus. Sols., LLC*, 840 F. Supp. 2d 324 (D.D.C. 2012) ...................................8, 14

## STATUTES, RULES, AND REGULATIONS

Fed. R. Civ. P. 16(b)(4)...................................................................................................................7

Fed. R. Civ. P. 26(b)(1)..................................................................................................................10

Fed. R. Civ. P. 30...........................................................................................................................7

Fed. R. Civ. P. 37(e) ......................................................................................................................13

Fed. R. Civ. P. 45(a) ......................................................................................................................10

Fed. R. Civ. P. 45(g) ......................................................................................................................13

## OTHER AUTHORITIES

6A Wright & Miller, Federal Practice and Procedure § 1522.2 (3d ed. 2010)................................8

## INTRODUCTION

Yanping Chen seeks a short deposition of Stephen Rhoads narrowly targeted to an important issue:  the late-breaking disappearance of the phone Mr. Rhoads used to respond to a Rule 45 subpoena after Dr. Chen discovered the existence of a trove of unproduced text messages between Mr. Rhoads and former Fox News reporter Catherine Herridge.  Both Mr. Rhoads and Ms. Herridge are key figures in this Privacy Act case, which centers on the unlawful leak to Fox News of private materials from an FBI investigation of Dr. Chen.  Contrary to Mr. Rhoads' assertion (at 5) that this subpoena is part of an unwarranted "fishing expedition" into Mr. Rhoads, the D.C. court overseeing the underlying litigation has concluded that "Rhoads is a key witness in Dr. Chen's Privacy Act suit," *Chen v. FBI*, 20-mc-107, ECF No. 45 at 1 (D.D.C. Nov. 23, 2021), and "[t]he known evidence—including Rhoads's contacts with Fox News…— shows … Rhoads may have disclosed the documents himself or otherwise played a role in the leak," *id.*, ECF No. 26 at 6 (Dec. 24, 2020).

The proposed two-hour, remote deposition will focus on the disappearance of Mr. Rhoads' phone and his prior efforts to search that phone for the missing text messages.  The potential spoliation of this key evidence is highly relevant to the likelihood that Mr. Rhoads willfully leaked Privacy Act-protected information to Ms. Herridge.  Given this troubling development, Dr. Chen must determine and test the veracity of Mr. Rhoads's explanation for losing the phone, as well as what he had previously done to search it for responsive communications.  The declaration submitted by Mr. Rhoads in support of his motion to quash— while providing useful information that was undisclosed during months of negotiation with Mr. Rhoads about forensically imaging the phone, during which time Dr. Chen wrongly believed that Mr. Rhoads had preserved the phone—does not fully answer the relevant issues, including

whether Mr. Rhoads took all reasonable steps to locate the missing phone or the missing messages.

## BACKGROUND

This discovery dispute is ancillary to a Privacy Act case filed in 2018 against several federal agencies for the unlawful leak to Fox News of private materials from an FBI investigation of Dr. Chen.  Declaration of Paul J. Orfanedes Ex. 1, ECF No. 2-2 (complaint). Mr. Rhoads is a former employee of one of the defendants who appeared as an on-the-record source in Fox News's reports, claiming to have been an FBI informant.  *See id.*  Because Mr. Rhoads is a likely source of the leaks, Dr. Chen served him a Rule 45 subpoena on April 7, 2020. Orfanedes Decl. Ex. 3.  The subpoena sought "any communication to or from … Catherine Herridge," including "records showing the dates, times, numbers, and addresses used for any … text … to or from" Ms. Herridge.  *Id*.  On May 21 and June 18, 2020, Mr. Rhoads produced PDF screenshots of certain text messages between him and Ms. Herridge in response to the subpoena. Orfanedes Decl. ¶¶ 5-6.

Mr. Rhoads also agreed to preserve his phone at Dr. Chen's expense in response to her concern that it may need to be imaged in the future.  Specifically, after being told on May 6, 2020, that Mr. Rhoads had taken screenshots of responsive text messages but would soon dispose of the phone, Dr. Chen's counsel offered to pay for him to preserve the phone for fear that "there may be other information … that is responsive and will be irretrievably lost if Mr. Rhoads disposes of the phone."  *Chen*, 18-cv-3074, ECF No. 87-5 at 2 (D.D.C. July 6, 2022).  Mr. Rhoads' counsel responded that "[w]e will take you up on your offer to reimburse Chief Rhoads for … not returning the phone."  *Id.* at 1.  Dr. Chen paid Mr. Rhoads' counsel as requested.  *Id.*, ECF No. 87-2 at ¶ 8 (July 6, 2022).

About a year later, on June 2, 2021, following a largely unsuccessful motion to quash by Mr. Rhoads, Dr. Chen received Mr. Rhoads' phone logs from T-Mobile, covering calls and messages between September 2014 and June 2017. *Cf. Chen*, 20-mc-107, ECF No. 26 (Dec. 24, 2020) (denying Mr. Rhoads' motion to quash subpoena to T-Mobile for the specified time period). Those logs proved a "Rosetta stone" in understanding Mr. Rhoads' contacts, revealing notable communications with Ms. Herridge and others. *See id.*, ECF No. 38 (July 29, 2022). After the formal close of discovery in November 2021 and while preparing for the deposition of Mr. Rhoads scheduled for March 2022,[1] Dr. Chen discovered that these logs reflected numerous text messages between Mr. Rhoads and Ms. Herridge that Mr. Rhoads did not produce in response to his Rule 45 subpoena. Accordingly, Dr. Chen sent a letter to Mr. Rhoads' attorneys on March 2, 2022, informing them of the extensive discrepancies and stressing the importance of recovering the missing text messages. *See Chen*, 18-cv-3074, ECF No. 87-6 (July 6, 2022).

For example, the letter demonstrated that on February 14, 2017—10 days before Fox News's first article about Dr. Chen—the phone logs show seven text messages between Mr. Rhoads and Ms. Herridge that are inexplicably missing from Mr. Rhoads' corresponding screen capture. *See id.* at A1. And on February 25, 2017, the day after publication, Mr. Rhoads' screen capture accurately matches three messages reflected on the logs, but two others are missing. *Id.* at A2. Moreover, the logs reflect another 186 missing messages exchanged between November 2014 and November 2016—a period entirely excluded from Mr. Rhoads' produced text messages—as well as eight messages exchanged in 2017 with another number belonging to Ms. Herridge. *Id.* at 3. Dr. Chen accordingly asked Mr. Rhoads to search again for the missing text

---

[1] This deposition took place after the close of discovery with the D.C. court's authorization, to accommodate the schedules of Mr. Rhoads and government counsel. *See Chen*, 18-cv-3074, ECF Nos. 55, 71, 76.

messages.  *Id.* at 1.  And, to the extent he had deleted them, Dr. Chen offered to pay a third party to forensically image his phone to recover them.  *Id.*

Dr. Chen sent three follow-up emails on this issue in March 2022, with no substantive response.  *See Chen*, 18-cv-3074, ECF No. 87-3 at 9-10 (July 6, 2022).  On March 17, 2022, Dr. Chen received additional T-Mobile phone logs, covering Mr. Rhoads' communications between December 2012 to July 2014 and July 2017 to December 2018, which similarly revealed text messages with Ms. Herridge not produced by Mr. Rhoads.  *Cf. Chen*, 20-mc-107, ECF No. 45 (Nov. 23, 2021) (expanding the time period of production for Mr. Rhoads' phone logs for certain phone numbers).  Dr. Chen's counsel raised the discrepancies between Mr. Rhoads' phone logs and his production during his deposition on March 23, 2022, asking Mr. Rhoads if he was "aware of any text messages with Catherine Herridge that you did not produce to us as part of this litigation?"  *Chen*, 18-cv-3074, ECF No. 87-5 at 149:24-25, 150:2-3 (July 6, 2022).  Mr. Rhoads said he was not, and that his search was conducted by "third party people."  *Id.* at 150:4-5.  But when directly asked if he personally deleted text messages with Ms. Herridge at any point, he replied, "I may have, sir."  *Id.* at 150:12.  Dr. Chen's counsel also asked, "[s]o if text messages appear on your phone records, … but you weren't able to find them in your phone, where are they?"  *Id.* at 150:6-8.  Mr. Rhoads responded, "I don't know, sir.  I'm not an IT guy." *Id.* at 150:9.  Mr. Rhoads never indicated that he no longer possessed the phone in question, nor that the "third party people" had not in fact imaged his phone.

Following the deposition, Dr. Chen again reached out to Mr. Rhoads' attorneys for clarification, noting that Mr. Rhoads testified that his attorneys had hired a third-party vendor to assist in responding to the subpoena.  *Id.*, ECF No. 87-3 at 9 (July 6, 2022).  After two further follow-up emails, Mr. Rhoads' attorneys finally replied on April 22 and 27, stating that Mr.

Rhoads fully complied with the subpoena and that no image had been taken of the phone.  *Id.* at

6-8.  Dr. Chen responded to confirm whether Mr. Rhoads would be willing to permit Dr. Chen to

now image the phone at her expense.  *Id.* at 5-6.  Mr. Rhoads ultimately rejected that offer on

May 18, 2022.  *Id.* at 5.  This left Dr. Chen no other option but to seek court intervention.

The next day, on May 19, Dr. Chen's counsel informed Mr. Rhoads' counsel that they

would be calling the Court the following day to seek leave to move to compel forensic imaging

of the phone.  *Id.* at 4.  Suddenly, Mr. Rhoads' counsel revealed for the first time that the phone

was lost, and had been for quite some time:

> It's been unclear from your emails which phone or phones you seek to have imaged.
> You should know that Chief Rhoads' wife's illness obviously caused substantial
> disruption to their household, and, in the aftermath of Sgt. Maj. Rhoads' death,
> family members cleaned out the Rhoads' home.  It is believed that a family member
> may have disposed of the malfunctioning phone Chief Rhoads used at the time he
> was subpoenaed.  Chief Rhoads has been unable to locate the phone despite his best
> efforts, and it is believed that the phone is now lost.  I don't know whether this
> affects how you plan to proceed.

*Id.* at 3.  On May 24, Mr. Rhoads' counsel further revealed that Mr. Rhoads and his attorneys

were likely aware that the phone was lost for some time while they were stonewalling Dr. Chen's

requests to pay to image it.  Apparently, "Rhoads began searching for the malfunctioning phone

sometime after [Dr. Chen's] March 2nd letter" identifying the missing text messages, "and made

substantial efforts to locate the phone for an extended period of time thereafter."  *Id.* at 1.  But

Mr. Rhoads' counsel chose not "to inform [Dr. Chen] that he was no longer able to locate" the

phone until May 19, because Dr. Chen was about to "press the matter with the Court."  *Id.*  Mr.

Rhoads then refused to consent to a short deposition about his loss of the phone.  Prior to the

filing of his declaration with the motion to quash, Mr. Rhoads did not offer any additional details

about the loss of the phone or his efforts to recover it.

Dr. Chen accordingly sought leave from the D.C. court to serve a subpoena for a second deposition of Mr. Rhoads narrowly targeted at issues related to the loss of his phone.  The court granted the motion, ordering: "Plaintiff may issue a deposition subpoena to Stephen Rhoads for a two-hour remote deposition for the limited purpose of obtaining testimony related to the apparent disappearance of the phone at issue and Rhoads's search of that phone for messages responsive to the prior subpoena issued to him under Federal Rule of Civil Procedure 45."  Minute Order, *Chen*, 18-cv-3074 (June 22, 2022).

## ARGUMENT

### I.    Designating a Remote Deposition Does Not Render the Subpoena Defective

Dr. Chen—for Mr. Rhoads' convenience—included on the subpoena that the deposition should take place remotely.  *See* ECF No. 2-2 at 108-110.  The issuing court's order granting leave for Dr. Chen to serve this subpoena similarly directed that it should be a remote deposition. Minute Order, *Chen*, 18-cv-3074 (June 22, 2022).  Mr. Rhoads now claims that the remote designation either renders "the subpoena … defective on its face because it fails to identify the location of the deposition, … or, because Chief Rhoads now resides in Marshall, Illinois, the place where Chief Rhoads would answer the questions is in the Southern District of Illinois.  If jurisdiction exists at all, the place of compliance is in the Southern District."  ECF No. 2 at 11. The second interpretation is clearly correct, although Mr. Rhoads would be free to participate in the deposition from any location convenient for him.

First, Dr. Chen does not challenge Mr. Rhoads' conclusion that the proper place of compliance is in the Southern District of Illinois, where Mr. Rhoads is now located.  Indeed, that Mr. Rhoads would file any motion to quash in Illinois was expressly discussed by Mr. Rhoads and the parties to the underlying litigation in advance of Dr. Chen's motion to the court in the District of Columbia for leave to serve the deposition subpoena.  *Chen*, 18-cv-3074, ECF No. 87-

3 (D.D.C. July 6, 2022).  While Dr. Chen seeks to transfer the motion under the established

procedures set forth in Rule 45(f), such a request does not suggest Mr. Rhoads filed this motion

initially in the wrong district.  Any purported confusion by Mr. Rhoads over the place of

compliance is contradicted by the prior discussions of the parties and easily resolved by Dr.

Chen's non-opposition to the location of filing.

      Second, Mr. Rhoads cites no case—and Dr. Chen is aware of none—suggesting that a

subpoena is defective for designating a remote deposition.  The Federal Rules expressly give

courts the power to order that a deposition take place remotely, Fed. R. Civ. P. 30 (providing that

a court may order "a deposition be taken by telephone or other remote means"), which the

D.D.C. did here, Minute Order, *Chen*, 18-cv-3074 (D.D.C. June 22, 2022).  To the extent that

this Court disagrees, Rule 45 permits the Court to modify the subpoena by listing an alternative

place of compliance.  *See, e.g.*, *Matter of May*, No. 13-32459, 2014 WL 12923988, at *1 (Bankr.

N.D. Ind. July 9, 2014) ("Bell asserted that, because his residence and place of employment are

approximately 250 miles away from the deposition location, his attendance at the scheduled

deposition in South Bend would place a substantial burden on him…. Acknowledging that the

defendant had declined to [conduct the deposition remotely], Bell requested that the court either

quash the subpoena or modify its terms.  In light of the imminently scheduled deposition the

court, by its Order of May 19, 2014, allowed the modification proposed by the plaintiff that the

deposition be held telephonically."); *Nicholas J. Murlas Living Tr. v. Mobil Oil Corp.*, No. 93 C

6956, 1995 WL 124186, at *2 (N.D. Ill. Mar. 20, 1995) ("The court concludes that the plaintiffs

should travel to Fairfax to complete Sutter's deposition, or conduct a telephonic deposition….").

## II.    There Is Good Cause For A Second Deposition of Mr. Rhoads

      "A [scheduling order] may be modified only for good cause," Fed. R. Civ. P. 16(b)(4),

which turns on the following six factors:

(1) whether trial is imminent; (2) whether the request is opposed; (3) whether the
non-moving party would be prejudiced; (4) whether the moving party was diligent
in obtaining discovery within the guidelines established by the court; (5) the
foreseeability of the need for additional discovery in light of the time allotted by
the district court; and (6) the likelihood that discovery will lead to relevant
evidence.

*2910 Georgia Ave. LLC v. D.C.*, 312 F.R.D. 205, 208 (D.D.C. 2015) (quoting *In re Rail Freight
Fuel Surcharge Antitrust Litig.*, 281 F.R.D. 12, 14 (D.D.C. 2011)). Good cause "can be shown,
'[i]n general, if … the deadlines cannot reasonably be met despite the party's diligence.'" *Watt
v. All Clear Bus. Sols., LLC*, 840 F. Supp. 2d 324, 326 (D.D.C. 2012) (quoting 6A Wright &
Miller, Federal Practice and Procedure § 1522.2 (3d ed. 2010)). This includes situations where a
discovery "modification is necessitated by acts of the opposing party" occurring after the close of
discovery. 6A Wright & Miller §1522.2 (collecting cases). Further, "[l]eave to conduct a
second deposition should ordinarily be granted." *Judicial Watch, Inc. v. U.S. Dep't of
Commerce*, 34 F. Supp. 2d 47, 54-55 (D.D.C. 1998) (discussing motion for second deposition
under Fed. R. Civ. P. 30(a)(2)). Here, the "good cause" factors weigh in favor of allowing a
limited deposition of Mr. Rhoads to fully determine the circumstances of the loss of the phone he
used to correspond with Ms. Herridge, including the circumstances under which his text
messages with Ms. Herridge became unavailable.

### A.    Dr. Chen Diligently Sought Discovery into the Unforeseeable Loss of the Phone

As to factors four and five (the movant's diligence in obtaining the desired discovery, and
the foreseeability of needing it), there is good cause to take additional discovery where, as here, a
plaintiff diligently moves to investigate unforeseeable facts that materialized after the close of
discovery. In *2910 Georgia Ave. LLC*, for instance, the court held that good cause existed to
conduct four new depositions after the close of discovery. 312 F.R.D. at 211-212. The court
explained that plaintiff's "diligen[ce] in obtaining discovery" could not be assailed because the

plaintiff "filed its motion within days of learning the facts at issue," which arose after discovery

closed. *Id.* at 211. "[A]dditional discovery on the issue" was thus not "foreseeable during the

discovery period." *Id.* In sum, "[b]ecause th[e] information came to light after [] discovery had

closed, the parties did not have an opportunity to fully develop the record[,]" and so the Court

permitted additional "limited" depositions. *Id.* Similarly, in *In re Rail Freight Fuel Surcharge*

*Antitrust Litigation*, the court permitted the deposition of a new witness who penned a relevant,

handwritten note produced on the last day of discovery. 281 F.R.D. at 14-15. There, the

defendant claimed that the plaintiffs were not diligent, and that the issue was foreseeable,

because "plaintiffs had the typed minutes of the … meeting" where the note was written "since

discovery began and used them in deposing other witnesses." *Id.* at 15. The existence of the

note, defendants argued, could have been uncovered earlier. *Id.* The court rejected this, stating

that "none of the witnesses who were deposed spoke of handwritten notes and plaintiffs … did

not recall or know that any one was … to take notes, let alone that such notes existed." *Id.*

Here, like the diligent plaintiff in *2910 Georgia Ave. LLC*, Dr. Chen informed the court

of her intent to re-depose Mr. Rhoads on May 26, 2022, after the close of discovery but just one

week after his counsel revealed the phone had been lost. Dr. Chen was shocked by the news,

given both Mr. Rhoads' prior agreement to preserve the phone at Dr. Chen's expense and the

months long back-and-forth regarding the potential imaging of Mr. Rhoads' phone during which

counsel failed to reveal that the phone had somehow disappeared. As in *2910 Georgia Ave.*

*LLC*, then, "the need for additional discovery" about the disposition of the phone was not

"foreseeable" until just recently. 312 F.R.D. at 211. And as in *In re Rail Freight Fuel*

*Surcharge Antitrust Litigation*, where no witness mentioned the late-breaking evidence, 281

F.R.D. at 15, Dr. Chen cannot be deemed undiligent by failing to predict the unthinkable during

Mr. Rhoads' deposition and ask directly whether he had lost the phone that he had promised to preserve. Dr. Chen does not know whether Mr. Rhoads was aware at that point that the phone had gone missing.

In any event, any delay in bringing this motion after Mr. Rhoads' deposition is not attributable to Dr. Chen. Dr. Chen sent a letter asking to image the phone on March 2, 2022. At any point thereafter, Mr. Rhoads and his counsel could have informed Dr. Chen that the phone could not be imaged because it had gone missing. But they concealed that fact—even after a month of subsequent correspondence about the merits of Dr. Chen's imaging request. Mr. Rhoads' counsel only revealed that bombshell when Dr. Chen scheduled a call to inform the court that she would move to compel the phone to be imaged.[2] Hence, any "delay was not simply the result of carelessness or error—rather, it was caused in large part by the representations made by [defendant]'s counsel." *See Trask v. Olin Corp.*, 298 F.R.D. 244, 268-269 (W.D. Pa. 2014) (good cause existed where "diligent discovery was hampered by both misleading statements from [defendant]'s counsel and [other] practical difficulties").

### B.     Mr. Rhoads' Additional Testimony Is Highly Relevant

Turning to factor six (the relevance of the discovery), Dr. Chen has a strong interest in obtaining Mr. Rhoads' sworn testimony about the disappearance of the phone he agreed to preserve. Nonparties like Mr. Rhoads may be deposed on "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see* Fed. R. Civ. P. 45(a). Whether Mr. Rhoads acted in good faith in safeguarding

---

[2] Mr. Rhoads' purported excuse, that it was unclear what phone Dr. Chen had been talking about all these months, cannot be taken seriously. *See Chen*, 18-cv-3074, ECF No. 87-3 at 3 (July 6, 2022). Dr. Chen's March 2 letter identified the phone as the one Mr. Rhoads used in 2020 to respond to his subpoena. The entire subject of this months-long dispute was discrepancies between Mr. Rhoads' phone logs and the screenshots he produced from that phone—the phone he agreed to preserve after Dr. Chen agreed to pay him to do so.

responsive evidence—evidence stored on a phone he used to communicate directly with

Ms. Herridge, the Fox News reporter who authored the reporting about Dr. Chen—is highly

relevant to whether Mr. Rhoads willfully leaked documents to Fox News reporters.  Mr. Rhoads'

months-long delay in notifying Dr. Chen regarding the missing phone only heightens the

relevance of the circumstances surrounding its disappearance.

     First and foremost, Mr. Rhoads' declaration, filed in tandem with his motion to quash

five days before his scheduled deposition, does not and cannot resolve all relevant lines of

inquiry arising from the loss of his phone.  *See* Declaration of Stephen Rhoads, ECF No. 2-1.

Nor does the written declaration provide Dr. Chen with the critical opportunity to evaluate the

credibility of Mr. Rhoads' assertions.  For example, Mr. Rhoads claims that he "kept the

malfunctioning phone in a Crown Royal bag inside a box in a storage room in the basement of

[his] Virginia home," and that in response to Dr. Chen's request to search for it, he "went to the

storage room … but the box was no longer there."  *Id.*  But Mr. Rhoads does not explain, among

other things, when he moved the phone into the storage room; whether he ever moved the phone;

when he last saw the phone; where else he searched for the phone; or whether other materials in

the storage room remained after the cleaning of his home.  Similarly, Mr. Rhoads expresses a

belief that "family members had helped clean out [his] home in Virginia" some time after August

2021, and that one of those family members "may have disposed of the malfunctioning phone."

*Id.*  Mr. Rhoads does not further explain the factual basis for this theory.  Nor does he explain

whether he made any attempts to ensure the phone was not discarded, whether any other items in

his home were apparently discarded without his knowledge, or how he participated in the

disposal process.

As another example, there is a factual inconsistency in Mr. Rhoads' declaration which he acknowledges outright.  He states that he began using the phone in question in February 2018. *Id.* at 4.  He adds that he "cannot say with confidence that, when [he] started using a new phone, [he] transferred text messages from the old phone to the new one" and that, to the best of his recollection, there was one instance where he tried to transfer old texts "but was not able to do so."  *Id.* at 4.  But Mr. Rhoads produced text messages with Ms. Herridge from as early as December 2016—shortly before Fox News published its first reporting about Dr. Chen in February 2017—and purportedly retrieved them from the phone he began using in February 2018.  Mr. Rhoads has not provided any adequate explanation to resolve this discrepancy.  Nor has he explained whether there is any backup of his phone, whether on a Google cloud account or computer backup, that might contain the missing messages.

It is imperative that Dr. Chen be able to examine the veracity of Mr. Rhoads' explanation of how the phone went missing.  It is notable that the announcement of the phone's disappearance came just as Dr. Chen was about to move to compel it to be imaged to try to recover a trove of unproduced messages that Mr. Rhoads either deleted or failed to produce. Indeed, given the discovery of these unproduced messages and sudden loss of the phone, there is now cause to further examine the motivation underlying Mr. Rhoads' initial attempt to dispose of it in May 2020—just before submitting his subpoena responses.  At that time, Dr. Chen paid for Mr. Rhoads not to return the phone in case his subpoena responses needed supplementing. Inquiring into Mr. Rhoads' understanding of that agreement and his efforts to preserve the phone will bear upon the credibility of any explanation he gives now for losing it.

Underlying these concerns is the fact that the missing messages Dr. Chen sought to recover from the now-missing phone were likely to be important to Dr. Chen's Privacy Act

claim.  As the D.C. court recognized, "[t]he known evidence—including Rhoads' contacts with Fox News…—shows … Rhoads may have disclosed the documents himself or otherwise played a role in the leak."  *Chen v. FBI*, 20-mc-107, ECF No. 26 at 6 (Dec. 24, 2020).  Indeed, the text messages he has produced show he was in direct contact with Ms. Herridge about the relevant publications.  The contents of the unproduced text messages that he either deleted or withheld would have thus been extremely relevant.  As explained to Mr. Rhoads' counsel, Mr. Rhoads exchanged text message conversations with Ms. Herridge shortly before and after the Fox News reports, but several messages are missing in the middle of those exchanges—including from the same date and time range as produced messages.  *See Chen*, 18-cv-3074, ECF No. 87-6 (July 6, 2022).  There are another 186 missing messages between 2014 and 2016.  *Id.*

These deleted messages may have provided information about the transfer or source of protected information about Dr. Chen that was leaked to Fox News.  Any testimony tending to show that Mr. Rhoads negligently or intentionally lost his phone, or had motive to do so, would speak to the likelihood that he was a source of the leak, that it was willful, and that he knew it was against the law.  Moreover, Mr. Rhoads' testimony would enable Dr. Chen to ensure Mr. Rhoads engaged in all reasonable efforts to find the phone, and, if not, to identify appropriate additional search efforts to request.  Lastly, examining these topics may also inform whether there are grounds to seek any sanctions regarding the unproduced messages.  *See, e.g.*, Fed. R. Civ. P. 37(e); Fed. R. Civ. P. 45(g).  There is thus no doubt that Mr. Rhoads' testimony explaining the loss of the phone and his process for producing responsive text messages "will lead to relevant evidence."  *2910 Georgia Ave. LLC*, 312 F.R.D. at 208.

### C.      Re-Deposing Mr. Rhoads Will Not Disrupt the Underlying Litigation

As to factor one (whether trial is imminent), even where other factors weigh against reopening discovery, there is "good cause" for additional discovery if the case would not be

disrupted because "no trial date has been set." *See Watt*, 840 F. Supp. 2d at 326-327.  In *Watt*, although the plaintiff "concede[d] that he did not diligently 'obtain[] discovery'" and that "[t]he need for [it] should have been apparent from the outset"—which is not the case here—the "factors nonetheless weigh[ed] in … favor" of discovery given that "no trial date has been set." *Id.*; *see also Childers v. Slater*, 197 F.R.D. 185, 189 & n.8 (D.D.C. 2000) ("[A]llowing additional time for discovery would not cause further delays with respect to trial.").  This factor strongly supports Dr. Chen.  Not only is trial not imminent, other discovery is ongoing, during which time Mr. Rhoads can be deposed without delaying the case.  *See Chen*, 18-cv-3074, ECF No. 78 (granting sixty-day media discovery period); Minute Order, *id.* (July 21, 2022) (granting motion establishing briefing schedule on motions to quash by media).

### D.      The Deposition Will Not Prejudice Defendants or Mr. Rhoads

The third factor (prejudice to the non-movants) similarly supports Dr. Chen's deposition request.  Courts have considered whether the defendant would "be prejudiced … in the sense of being unable to mount a defense against the new … testimony." *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1255 (10th Cir. 2011).  That concern is not present here.  Defendants and Mr. Rhoads will be able to later challenge any arguments Dr. Chen develops from Mr. Rhoads' new testimony.  The burden on Mr. Rhoads will also be minimal: the two-hour deposition will be narrowly targeted to the new revelations, and would take place virtually.  Indeed, the D.C. court specifically limited the scope of the deposition to "the apparent disappearance of the phone at issue and Rhoads's search of that phone for messages responsive to the prior subpoena issued to him under Federal Rule of Civil Procedure 45."  Minute Order, Chen, 18-cv-3074 (June 22, 2022).  There is no reason to believe that a deposition on those facts will require extensive preparation by Mr. Rhoads or Defendants, nor that such a deposition would implicate any

sensitive or law enforcement privileged information.  Many more hours have been and will be spent on the litigation of these motions than would be spent by Mr. Rhoads answering questions.

* * *

In sum, five of the six "good cause" factors support Dr. Chen's request for a limited deposition of Mr. Rhoads:  The evidence sought is relevant, Dr. Chen diligently sought discovery into the loss of the phone, re-deposing Mr. Rhoads will not disrupt the underlying litigation, and the deposition will not prejudice Mr. Rhoads or Defendants.  The only remaining factor, whether Dr. Chen's request is opposed, should not outweigh the other factors.

## CONCLUSION

For the above reasons, Dr. Chen respectfully requests that the Court deny Mr. Rhoads' motion to quash.

/s/ Matt Jones

Matt Jones (D.C. Bar No. 502943)*
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
matt.jones@wilmerhale.com

*Pro hac vice* forthcoming

*Counsel for Plaintiff*

15