**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **YANPING CHEN**, |
| |
| Plaintiff, |
| |
| v. |
| |
| **FEDERAL BUREAU OF** |
| **INVESTIGATION**, *et al.*, |
| |
| Defendants. |

Case No. 22-mc-0074 (CRC)

<u>MEMORANDUM OPINION AND ORDER</u>

Yanping Chen brought this Privacy Act lawsuit against several federal agencies alleging that personal records seized from her home by the FBI were unlawfully leaked to Fox News. Stephen J. Rhoads is a non-party to that case who assisted in the FBI's investigation of Chen and communicated with former Fox News reporter Catherine Herridge about Chen. Chen previously sought discovery from and deposed Rhoads concerning his contacts with Herridge and Fox. After that deposition, in May of this year, Chen learned that Rhoads could no longer locate a smartphone that contained text messages he exchanged with Herridge. Chen served Rhoads with a subpoena seeking to depose him a second time, via Zoom, concerning the loss of his smartphone and his searches of that phone in response to her prior subpoena. Rhoads moved to quash the subpoena. The Court will deny the motion to quash and permit Chen to conduct a two-hour, virtual deposition of Rhoads for the limited purpose of obtaining testimony related to the disappearance of the phone at issue and Rhoads's search of that phone for messages responsive to the prior subpoena.

## I.     Background

The parties are familiar with the facts alleged in the Complaint and those revealed so far through discovery.  Chen is a naturalized citizen of the United States and the founder of the University of Management and Technology ("UMT"), an educational institution that historically attracted a significant number of military servicemembers who attended with tuition assistance from the Department of Defense ("DOD").  Compl. ¶¶ 12-13, 42.  Beginning in 2010, Chen became the focus of an FBI investigation concerning statements she made on immigration forms about her work in China in the 1980s.  Id. ¶ 15.  As a part of that investigation, the FBI executed search warrants for Chen's home and the main office of UMT, seizing materials during both searches.  Id. ¶¶ 18, 20.

About a year after prosecutors informed Chen that no charges would be filed against her, Fox News ran a series of television segments about Chen, her university, and her alleged ties to the Chinese military.  Id. ¶¶ 22, 25–31.  Catherine Herridge, then a reporter for Fox, interviewed Rhoads, a former employee of UMT who had assisted the FBI's investigation of Chen.  See Fox News, Taxpayer-Funded School Suspected of Chinese Military Ties, YouTube (Feb. 24, 2017), https://www.youtube.com/watch?v=jh2Xk42PVA8.  The Fox reporting also included family photographs of Chen; excerpts from Chen's immigration forms; and an excerpt from what appears to be the FBI's contemporaneous summary of an interview conducted for the investigation.  Id.  In December 2018, Chen filed this Privacy Act lawsuit against the FBI, DOD, and two other federal agencies, alleging that government agents unlawfully leaked to Herridge and Fox information gathered by the FBI during its investigation of her.  Compl. ¶ 23.

Rhoads has emerged as a key witness in this lawsuit, which has increasingly focused on his communications with Herridge and the possibility that he played a role in the alleged leak.  In

April 2020, Chen served Rhoads with a Federal Rule of Civil Procedure 45 subpoena seeking "any communication to or from . . . Catherine Herridge," including "records showing the dates, times, numbers, and addresses used for any . . . text . . . to or from" her.  Declaration of Paul J. Orfanedes in Support of Mot. to Quash ("Orfandedes Decl."), Ex. 3, ECF 2-2 at 75.  In May and June 2020, Rhoads produced PDF screenshots of certain text messages between him and Ms. Herridge in response to the subpoena.  Orfandedes Decl. ¶¶ 5–6.  As Rhoads was preparing to respond to the subpoena, he informed Chen that the smartphone from which he was collecting text messages was malfunctioning and that he planned to return the phone to his cell phone carrier.  Declaration of Matthew T. Jones in Support of Plaintiff Yanping Chen's Motion for Limited Deposition of Stephen Rhoads ("Jones Decl."), Ex. 3, Chen v. FBI, 1:18-cv-03074-CRC, ECF 87-5 at 3–4.[1]  Expressing concerns that "the disposal of the phone without extracting all responsive information will lead to the unrecoverable loss and destruction of information that must be produced under the subpoena," Chen offered to reimburse Rhoads for the $400 fee charged by his cellphone provider for keeping the phone, and Rhoads agreed to hold on to the phone.  Id. at 2–3.

After additional discovery disputes, Chen sought and obtained records from T-Mobile logging the dates, times, and locations of Rhoads's phone calls and text messages between September 2014 and June 2017.  Orfandedes Decl. ¶¶ 8–9; see Jones Decl., Ex. 4, ECF 87-6 at 5–11.  As Chen was preparing to depose Rhoads in March 2022, Chen discovered that the phone logs from T-Mobile showed that Rhoads had exchanged nearly 200 messages with Herridge that were not included in Rhoads's earlier production of text messages to Chen, including messages

---

[1] All citations to the Jones Declaration refer to materials filed in Chen v. FBI, 1:18-cv-03074-CRC.

sent just over a week before the Fox story about Chen broke.  Jones Decl., Ex. 4, ECF 87-6 at 2–4.  Chen sent several emails to Rhoads between March and May, inquiring about the discrepancy, asking whether he had taken any forensic image of the phone, and offering to pay for such an imaging if he had not.  Jones Decl., Ex. 1, ECF 87-3.  Chen raised similar questions during Rhoads's March 2022 deposition, asking whether he was aware of any text messages to Herridge that he had not produced and whether he might have deleted some messages.  Jones Decl., Ex. 5, ECF 87-7 at 3–6.

As Chen was preparing to seek the Court's intervention to have Rhoads produce the phone for forensic imaging, Rhoads's counsel revealed for the first time on May 19 that Rhoads's phone was lost.[2]  Jones Decl., Ex. 1, ECF 87-3 at 4.  Rhoads had in fact been unable to locate the phone since at least the beginning of March.  Id. at 2; see also Declaration of Stephen J. Rhoads in Support of Mot. to Quash ("Rhoads Decl."), ECF 2-1 ¶¶ 10–12.  Chen notified Rhoads and the Court that she would seek to depose him further regarding the loss of his smartphone.  Id. at 3; Minute Order, Chen v. FBI, 1:18-cv-03074-CRC (D.D.C. June 1, 2022).  After briefing, the Court granted Chen's motion for a limited deposition and ordered that Chen may issue a deposition subpoena for Rhoads "for a two-hour remote deposition for the limited purpose of obtaining testimony related to the apparent disappearance of the phone at issue and Rhoads's search of that phone for messages responsive to the prior" subpoena.  Minute Order, Chen v. FBI, 1:18-cv-03074-CRC (D.D.C. June 22, 2022).

---

[2] Specifically, Rhoads's counsel wrote in an email: "You should know that Chief Rhoads' wife's illness obviously caused substantial disruption to their household, and, in the aftermath of Sgt. Maj. Rhoads' death, family members cleaned out the Rhoads' home.  It is believed that a family member may have disposed of the malfunctioning phone Chief Rhoads used at the time he was subpoenaed.  Chief Rhoads has been unable to locate the phone despite his best efforts, and it is believed that the phone is now lost."  Jones Decl., Ex. 1, ECF 87-3 at 4.

On July 5, Chen served Rhoads with a subpoena pursuant to Federal Rule of Civil Procedure 45, ordering Rhoads to appear for a deposition on July 20 "[t]o be conducted remotely via Zoom."  Orfanedes Decl., Ex. 6, ECF 2-2 at 108.  Rhoads filed a motion to quash the subpoena in the Southern District of Illinois, where he resides, and upon Chen's motion, that court transferred the case to this Court.  See Order, Chen v. FBI, 1:22-mc-00074-CRC (D.D.C. July 26, 2022).  The motion to quash is now ripe for decision.

## II.   Legal Standards

A district court "must quash or modify a subpoena that . . . subjects a person to undue burden" or "requires a person to comply beyond the geographical limits specified in Rule 45(c)." Fed. R. Civ. P. 45(d)(3)(A).  To determine whether a subpoena is unduly burdensome, courts apply the general discovery standard, under which parties may discover "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); Gouse v. District of Columbia, 359 F. Supp. 3d 51, 56 (D.D.C. 2019). "The person objecting to production has a heavy burden to show that the subpoena should not be enforced."  Millennium TGA, Inc. v. Comcast Cable Commc'ns LLC, 286 F.R.D. 8, 11 (D.D.C. 2012) (citing Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 403 (D.C. Cir. 1984)).

The Court may modify a scheduling order to reopen discovery when there is "good cause."  Fed. R. Civ. P. 16(b)(4).  To determine whether good cause exists, the Court considers "(1) whether trial is imminent; (2) whether the request is opposed; (3) whether the non-moving party would be prejudiced; (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court; (5) the foreseeability of the need for additional discovery in light of the time allotted by the district court; and (6) the likelihood that discovery will lead to relevant evidence."  2910 Ga. Ave. LLC v. District of Columbia, 312 F.R.D. 205,

208 (D.D.C. 2015) (quoting In re Rail Freight Fuel Surcharge Antitrust Litig., 281 F.R.D. 12, 14 (D.D.C. 2011)).  "The party seeking to reopen discovery bears the burden of showing good cause," but "ultimately, the decision 'is within the sound discretion of the trial court.'"  Lopez v. Timeco Inc., 291 F. Supp. 3d 1, 3 (D.D.C. 2017) (first quoting Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000); and then quoting Barnes v. District of Columbia, 289 F.R.D. 1, 7 (D.D.C. 2012)).

### III.  Analysis

####     A.  The Adequacy of Chen's Subpoena

Federal Rule of Civil Procedure 45 states, as relevant here, that every subpoena must "command each person to whom it is directed to" attend and testify or produce documents "at a specified time and place."  Fed. R. Civ. P. 45(a)(1)(A)(iii).  Without citing any caselaw, Rhoads asserts that Chen's subpoena, which commands him to sit for a deposition "[t]o be conducted remotely via Zoom," is facially invalid because it does not identify any physical location for his deposition.  Mot. to Quash at 10–11.  Listing a physical location is essential, Rhoads maintains, because the location "determines what court has jurisdiction to adjudicate issues regarding the subpoena."  Reply at 1.

This argument is too clever by half.  Chen's subpoena is not invalid merely because she identified a virtual location Rhoads's deposition.  As Rhoads acknowledges, the Federal Rules of Civil Procedure expressly contemplate remote depositions.  Rule 30 states that "the court may on motion order" that "a deposition be taken by telephone or other remote means," and that for purposes of that rule, "the deposition takes place where the deponent answers the questions,"

Fed. R. Civ. P. 30(b)(4).[3]  In other words, "for depositions to be taken via Zoom, the Court deems the place of compliance to be where the deponent is located."  Patane v. Nestle Waters N. Am. Inc., 3:17-cv-1381 (JAM), 2022 WL 6569823, at *3 (D. Conn. Oct. 4, 2022).  Rule 45, in turn, states that a subpoena may require a person to attend a deposition "within 100 miles of where the person resides, is employed, or regularly transacts business in person," and that an individual served with a subpoena may move to quash or modify the subpoena in "the court for the district where compliance is required."  Fed. R. Civ. P. 45(c)(1)(A), (d)(3).

In this case, the Court ordered, in response to Chen's motion for a limited deposition of Rhoads, that "Plaintiff may issue a deposition subpoena to Stephen Rhoads for a two-hour *remote* deposition."  Minute Order, Chen v. FBI, 1:18-cv-03074-CRC (D.D.C. June 22, 2022) (emphasis added).  Chen then served a subpoena calling on Rhoads to answer questions in whatever geographic location he wishes "via Zoom."  Orfanedes Decl., Ex. 6, ECF 2-2 at 108. Rhoads, apparently intending to answer questions from his home in Illinois, moved to quash the subpoena in the Southern District of Illinois.  Jones Decl., Ex. 1, ECF 87-3 at 2; see Mot. to Quash at 1, 11.  There is no assertion in this case that the Southern District of Illinois lacked jurisdiction to hear Rhoads's motion to quash, that Rhoads would have to travel more than 100 miles from his residence to comply with the subpoena, or that Rhoads was at all confused about where he could file a challenge to the subpoena.  By permitting Rhoads to be deposed, at his own convenience, wherever he wants—including from his home—the subpoena gave him "reasonable written notice" of the time and place of the deposition.  Florida v. United States, No.

---

[3]  That Rule 30's provision permitting depositions by remote means does not expressly incorporate Rule 45 is immaterial; Rule 30 is "the basic rule on the procedure to be used in taking a deposition by oral examination during the pendency of an action," 8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2101 (3d ed.), including depositions "compelled by subpoena under Rule 45," Fed. R. Civ. P. 30(a)(1).

CV 11-1428, 2012 WL 13218793, at *2 (D.D.C. Feb. 16, 2012) (quoting Nuskey v. Lambright, 251 F.R.D. 3, 13 (D.D.C. 2008)); see also Azzarmi v. 55 Fulton Market, 20-CV-6835 (GBD) (BCM), 2022 WL 3867850, at *1 (S.D.N.Y. Aug. 30, 2022) (permitting "virtual" location for deposition); Perez v. Walmart, Inc., 21-CV-04522 (JMW), 2022 WL 4329769, at *2 (E.D.N.Y. Sept. 19, 2022) (same).

Because Chen's subpoena listed a virtual location for the deposition, permitting Rhoads to be questioned and to challenge the subpoena at a location of his choosing, the subpoena complies with the terms of Rule 30 and Rule 45.

    B.  Good Cause

Rhoads further contends that Chen's subpoena should be quashed because the information she seeks is not relevant and proportional to the needs of the case and because there is not good cause to reopen discovery. See Mot. to Quash at 11–15; see also Gov.'s Joinder in Mot. to Quash at 7–11. The Court rejects each of Rhoads's arguments.

To start, Chen has demonstrated that good cause exists to depose Rhoads for an additional two hours. The Court "primarily considers the diligence of the party in seeking discovery before the deadline." Lopez, 291 F. Supp. 3d at 3 (quoting Barnes, 289 F.R.D. at 7). Here, Chen sent Rhoads's counsel several emails throughout March and April asking about the discrepancy between Rhoads's produced text messages and T-Mobile's messaging logs. Jones Decl., Ex. 1, ECF 87-3. Although Rhoads was aware that the phone (apparently) could not be located as early as the first week of March, he did not inform Chen that the phone was lost until May 19. Id. at 4. Within a few days of that revelation, Chen notified Rhoads that she would seek to compel him to appear for further deposition concerning the loss of the phone, id. at 3, and within a few days of receiving Rhoads's answer to that email, alerted the Court to the discovery

dispute, Minute Order, <u>Chen v. FBI</u>, 1:18-cv-03074-CRC (D.D.C. June 1, 2022).  Especially given Rhoads's 2020 agreement to retain the phone in case Chen later sought to have it forensically imaged, Jones Decl., Ex. 3, ECF 87-5 at 2–3, Chen could not reasonably have foreseen that Rhoads would lose the phone.  Nor could Chen have asked Rhoads about the circumstances of his loss of the phone at his March 2022 deposition, two months before Rhoads first informed her of its disappearance.  The Court therefore concludes that Chen acted diligently.  <u>See</u> <u>2910 Ga. Ave.</u>, 312 F.R.D. at 211 ("Because this information came to light after the discovery had closed, the parties did not have an opportunity to fully develop the record on these issues . . . ."); <u>id.</u> (party acted diligently when it filed its motion to reopen discovery "within days of learning the facts at issue").

Rhoads maintains that Chen was not diligent because "she had ample opportunity to question him about" his previous search of the lost smartphone "at his 6 ½ hour deposition on March 24, 2022."  Reply at 5; Mot. to Quash at 14.  Rhoads and the Government also point out that Chen had received Rhoads's phone logs in June 2021 but did not raise concerns about unproduced text messages until March 2022, a few weeks before Rhoads's deposition.  Mot. to Quash at 13; Gov.'s Joinder in Mot. to Quash at 8.  In fairness to Rhoads, Chen does not explain why she did not uncover the discrepancy between Rhoads's phone logs and the text messages he produced until early March 2022.  But that delay notwithstanding, Chen could have questioned Rhoads about the loss of his phone—and would have had more reason to spend limited deposition time on his search of the phone responsive to the prior subpoena—had Rhoads timely informed her that the phone was lost.  According to his declaration, Rhoads began looking for the phone just after Chen's March 2 letter and discovered immediately that the phone was no longer where he had stored it.  Rhoads Decl. ¶¶ 10–13.  Despite Chen's repeated inquiries about

the phone, Rhoads did not notify her of the phone's disappearance for another three months, two months after the deposition.  So, although Chen could likely have discovered the potential problems with Rhoads's search of the phone earlier, it was Rhoads's delay—not hers—that prevented Chen from probing him on these issues during his deposition.  The quality of Rhoads's previous searches of the phone is all the more significant in light of the phone's disappearance. It stands to reason that Chen would have spent more time questioning Rhoads about his previous searches had she known then what she knows now.

The remaining good cause factors also weigh in Chen's favor.  The Court has not yet set a trial date and is still addressing discovery disputes in this case, so Rhoads's deposition will not likely "cause further delays with respect to trial."  Childers v. Slater, 197 F.R.D. 185, 189 n.8 (D.D.C. 2000).  For similar reasons, there is no indication that either the Government or Rhoads will be prejudiced by a brief additional deposition.[4]

As for the final good cause factor, the additional, limited deposition is highly relevant to Chen's suit.  Chen suspects that Rhoads may have leaked the sources used in Herridge's reporting about her, and Chen has now learned that Rhoads's prior production of text messages does not reflect all of his communications with Herridge.  In light of those facts, testimony concerning the disappearance of Rhoads's phone, his search for the phone, and whether he had a motive to lose the phone speak to the possibility that he had a role in the alleged leak.  The Court

---

[4] The Government objects that, because Rhoads's deposition could implicate privileged or classified information, Government counsel would need to attend any second deposition to assert appropriate objections and that the Government would need access to a sensitive compartmentalized information facility ("SCIF").  Gov.'s Joinder in Mot. to Quash at 7–11.  The scope of Rhoads's deposition is limited to the circumstances surrounding the disappearance of his smartphone and his search of that phone before it was lost, and the Government has not explained why those issues might implicate sensitive classified information.  But in any event, because the deposition will take place virtually, the Government is free to attend from any location with access to a SCIF.

expresses no opinion on that question, but the loss of Rhoads's phone surely has at least some "tendency to make" his role in the leak "more or less probable than it would be without the evidence." Fed. R. Evid. 401(a).

Rhoads's objections to the relevance and proportionality of a further deposition do not pass muster. Rhoads cites no reason why a two-hour, remote deposition would be burdensome for him. Instead, he maintains that the details concerning this phone are irrelevant because many of the messages reflected in his T-Mobile records predate the time when he used the phone in question, from February 2018 to May 2020. Mot. to Quash at 12–13. But it is quite conceivable that texts from 2014 to 2017 could have been stored on the phone; indeed Rhoads's production of text messages in response to a previous subpoena yielded multiple messages from 2016 and 2017. See Jones Decl., Ex. 4, ECF 87-6 at 3–11; Rhoads Decl. ¶ 14 (stating that Rhoads does "not know why the February 2018 phone [he] searched . . . had some messages on it from before [he] began using the phone").

Nor are Rhoads's declarations concerning the loss of the phone a sufficient substitute for a short, two-hour deposition. See Reply at 3–4. "Answering questions by declaration or affidavit after a deposition has been concluded is simply not an adequate substitute for live testimony," as "such an approach eschews the opportunity for opposing counsel to probe the veracity and contours of the statements" and "to ask probative follow-up questions." Alexander v. FBI, 186 F.R.D. 113, 121 (D.D.C. 1998). The Court sympathizes with Rhoads's personal loss over the last year and a half. See Mot. to Quash at 10–13. But that loss does not diminish Chen's right to test Rhoads's written explanation for his phone's disappearance through a deposition.

Last, Rhoads posits that Chen waived any right to question him about his phone when she did not respond to his May 2020 objection to doing so in response to Chen's prior subpoena. Mot. to Quash at 12.  Rhoads's objection stated only that "Mr. Rhoads objects to any assertion that the subpoena or Rule 45 of the Federal Rules of Civil Procedure requires him to make available for imaging or mirroring any device he may have used or is using to communicate or store electronically stored information." Id. at 7.  For one, such "conclusory allegations that a request is irrelevant immaterial, unduly burdensome, or overly broad" are "an inadequate response to a discovery request."  Klayman v. Jud. Watch, Inc., No. CV 06-670 (CKK) (AK), 2008 WL 11394169, at *3 (D.D.C. Mar. 12, 2008) (first quoting Gheesling v. Chester, 162 F.R.D. 649, 650 (D. Kan. 1995); and then quoting Obiajulu v. City of Rochester, 166 F.R.D. 293, 295 (W.D.N.Y. 1996)).  But assuming Rhoads's objection was valid, Chen did respond to it. Specifically, in May 2020, Chen's counsel stated that they were "deeply concerned that the disposal of the phone without extracting all responsive information will lead to an unrecoverable loss and destruction of information that must be produced under the subpoena" and paid Rhoads $400 to retain the phone. Jones Decl., Ex. 3, ECF 87-5 at 2–3.  Rhoads cannot now assert that Chen waived any right to inquire about the phone.

Accordingly, good cause exists to reopen Rhoads's deposition for the limited purposes of obtaining testimony related to the disappearance of his phone and Rhoads's previous search of that phone.  Because Rhoads has not shown that a two-hour, virtual deposition on these topics would cause him any undue burden, the Court will deny the motion to quash.  Chen may depose Rhoads prior to the parties' October 26 mediation session.

**IV.    Conclusion**

For these reasons, it is hereby

**ORDERED** that Rhoads's Motion to Quash Chen's Second Deposition Subpoena [Dkt.

No. 2] is DENIED.

**SO ORDERED**.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: <u>October 18, 2022</u>